UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MICHAEL RAY,

       Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____/

Civil Action No. 13-14466

HON.  GEORGE CARAM STEEH
U.S. District Judge
HON. R.  STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff John Michael Ray ("Plaintiff") brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under Title II of the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and that Plaintiff's motion be DENIED.

## PROCEDURAL HISTORY

On July 12, 2011, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging disability as of June 10, 2011 (Tr. 124).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on July 6, 2012 in Flint, Michigan before

-1-

Administrative Law Judge ("ALJ") Peter N. Dowd (Tr. 33). Plaintiff, represented by attorney Aaron Lemmens, testified (Tr. 38-59), as did Vocational Expert ("VE") Stephanee Leach (Tr. 58-64 ). On August 16, 2012, ALJ Dowd found that Plaintiff was not disabled (Tr. 28-29).

On August 27, 2013, the Appeals Council denied review (Tr. 1-5). Plaintiff filed for judicial review of the final decision on October 24, 2013.

## BACKGROUND FACTS

Plaintiff, born July 14, 1961,was 51 when the ALJ issued the decision (Tr. 29, 124). He completed 12th grade (Tr. 140) and worked previously as a maintenance worker (Tr. 141). He alleges disability due to back problems and "mental disorders" (Tr. 140).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff lived in Otisville, Michigan with his wife and 18-year-old stepson (Tr. 38-39). He graduated from high school and spent less than a year at a local community college (Tr. 39). He was able to read and write (Tr. 40). He continued to receive a small stipend for his work as an elected official on the Otisville City Council (Tr. 40). He was recently re-elected to a term ending in 2016 (Tr. 41). His work as a trustee required him to "make decisions, pay bills, [and] take care of personnel" (Tr. 41). He attended two meetings each month, lasting anywhere between half an hour to six hours (Tr. 42).

His past relevant work was limited to jobs as a maintenance worker (Tr. 42). He took

a sick leave in June, 2011 from his job with a public school system and had not yet returned to work (Tr. 42).  He received approximately $2,200 each month in disability payments from a private insurer (Tr. 43).  Since going on sick leave, his position had been terminated due to the privatization of the school system support staff (Tr. 43).  He had not worked since June, 2011 (Tr. 43).  He had applied for Workers' Compensation but had not received a determination (Tr. 44).

Plaintiff stood 6' 2" and weighed 205 pounds (Tr. 45).  He denied alcohol or illicit drug abuse (Tr. 46).  He received treatment for degenerative disc disease and a depressive disorder (Tr. 45).   His neurologist recommended back surgery, but he declined the recommendation because he was not confident that the proposed back procedure would improve his condition (Tr. 46).  His psychiatrist told him that he was "fairly stabilized" while on medication (Tr. 47).   Plaintiff took Hydrocodone, Acetaminophen, and Morphine Sulphide for back pain; Cymbalta and Hydroxyzine for depression; and Alprazolam for anxiety (Tr. 47).  He was able to take care of his own personal needs, let his dog out, prepare simple meals, and fold clothes (Tr. 49).  He did not vacuum or mop floors (Tr. 50).  He used a computer for shopping and paying bills but did not visit social network websites (Tr. 50). He did not perform yard work (Tr. 50).  He held a valid driver's license and was able to shop (Tr. 50).  He was convicted of an alcohol-related traffic violation in 1990, noting that at that time, he was going through a divorce (Tr. 51).

As of the time of the hearing, Plaintiff had "lost interest in most everything" (Tr. 51).

He owned two guns, a fishing boat, and a motorcycle but had not ridden the motorcycle in two years (Tr. 52). As a result of depression, he sometimes "f[lew] off the handle" with his wife and stepson (Tr. 53). He coped with depression well enough to perform his duties as a trustee so long as he adhered to his medication regimen (Tr. 54). He got along with his neighbors (Tr. 54). He would be unable to resume his work as a maintenance man due to the lifting, pushing, and pulling requirements and his inability to remain on his feet for extended periods (Tr. 55). In his opinion, his inability to stand or walk for extended periods precluded all work (Tr. 55). He was unable to stand for more than 15 minutes or walk for more than half a block due to right leg pain (Tr. 55-56). He was unable to lift more than a gallon of milk (Tr. 56). On a scale of one to ten, he generally experienced level "seven" pain (Tr. 56). He experienced increased pain when attempting strenuous activity (Tr. 57). He experienced sleep disturbances as a result of back and leg pain (Tr. 57). He avoided crowds (Tr. 57).

*At the close of his client's testimony, Plaintiff's attorney noted that a neurologist had opined that Plaintiff was unable to return to his work "in a custodial capacity" (Tr. 58, 341).*

-4-

### B.  Medical Evidence

### 1.  Treating Sources[1]

January, 2010 treating records by Alexander Rodriguez, M.D. note Plaintiff's report of chronic back pain (Tr. 204). He appeared fully oriented with a normal affect (Tr. 205). He was prescribed MS Contin and Vicodin and referred to a physical therapist (Tr. 205). In March, 2010, he was referred to a neurosurgeon (Tr. 203). April, 2010 physical therapy intake records state that Plaintiff's lower back pain, muscle spasms, and morning stiffness could be improved in a six-week course of therapy (Tr. 178). The following month, Plaintiff reported continued pain but the absence of a neurological defect or numbness (Tr. 199). In July, 2010, Plaintiff reported level "seven" pain while at home and level "six" pain at the time of the appointment (Tr. 197). September, 2010 treating notes state that Plaintiff reported depression but did not exhibit neurological symptoms from the back condition (Tr. 194).

Dr. Rodriguez's  June 2, 2011 notes state that Plaintiff reported anxiety (Tr. 181). On June 20, 2011, Plaintiff reported anxiety because he was losing his job (Tr. 179). Psychiatric intake notes from later the same month state that Plaintiff experienced anxiety as a result of "recently being told his position was eliminated and [that] he would not be retained with the school district" (Tr. 230). Plaintiff reported that he would be "seeking other

---

[1]Records created prior to the alleged June, 2011 onset of disability are included for background purposes.

form[s] of employment" (Tr. 228).  He reported good relationships with his wife, natural children, and step-son (Tr. 227).  He was advised to begin individual psychological therapy (Tr. 230).  Plaintiff was assigned a GAF of 61[2] (Tr. 219).  Therapy notes from later the same month state that Plaintiff was given information on new careers (Tr. 216).

In July, 2011, psychiatrist Gerald Pope, M.D. noted the diagnosis of an adjustment disorder "with mixed features" (Tr. 232).  He recommended continued outpatient therapy, discontinuing the use of Lexapro, and a reassessment of "the need for opioid administration" (Tr. 232, 257).  Counseling notes state that Plaintiff was advised to consult "job websites" (Tr. 215).  Plaintiff expressed frustration as a result of chronic back pain (Tr. 214).  September, 2011 therapy notes state that Plaintiff reported depression prior to losing his job (Tr. 337).    The same month, neurologist Paul LaClair, M.D. performed an initial examination, noting Plaintiff's report that 2008 epidural injections and more recent physical therapy did not improve the back condition (Tr. 253).  Dr. LaClair cited a 2008 MRI showing L3-4 and L4-5 herniations creating bilateral foraminal narrowing (Tr. 253, 298).  Plaintiff reported that he was unable to walk for more than 15 minutes or sit for more than 30 (Tr. 253).  Dr. LaClair recommended an updated MRI, noting that Plaintiff "might need to consider surgical intervention" for the lumbar stenosis (Tr. 254).

An October, 2011 MRI of the lumbar spine showing "no frank nerve root

---

[2]

GAF scores in the range of 61–70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* ("*DSM-IV-TR*" )*,* 34(4th ed. 2000).

compression" was "without significant change" from the 2008 study (Tr. 259, 298). Therapy notes from the same month state that Plaintiff did not believe that his psychological symptoms were improving (Tr. 333). The following month, Dr. LaClair noted 4/5 strength in the right leg (Tr. 284). Plaintiff declined a recommendation to consider surgery but agreed to steroid injections (Tr. 284). Dr. LaClair administered injections later the same month (Tr. 282). Therapy notes from the same month state that Plaintiff reported sadness as a result of a friend's death (Tr. 329).

In December, 2011, Plaintiff reported "a little bit of relief" from the injections but declined further injections (Tr. 281). Therapy notes from the same month state that Plaintiff experienced improved interaction with his extended family (Tr. 322). In January, 2012, Dr. LaClair, noting Plaintiff's complaint of worsening pain, increased the Lyrica dosage (Tr. 280). In March, 2012, Plaintiff reported that he had stopped taking Lyrica but continued taking Xanax, MS Contin, Ambien, Cymbalta, Vicodin, and Flexeril (Tr. 279). Dr. LaClair noted that Plaintiff appeared "alert, pleasant, and cooperative" and was fully oriented (Tr. 279). Therapy records from the same month sate that Plaintiff was worried about the health conditions of his son and daughter-in-law (Tr. 312-313). The following month, Plaintiff reported that he felt emotionally drained as a result of helping multiple family members in need of support (Tr. 310). In May, 2012, Plaintiff stated that he spent time with his grandchildren at least once a week and that the interaction was "therapeutic" (Tr. 307). Later the same month, he reported that he took care of his grandchildren at least once a week and

was becoming less isolated (Tr. 306).  The following month, he reported reduced symptoms of depression (Tr. 305).

In June, 2012, Dr. LaClair opined that due to L5 radiculopathy, Plaintiff remained "unfit to work in a custodial capacity" (Tr. 341).  He remarked that Plaintiff "could consider surgical intervention" for the radiculopathy (Tr. 341).

### 2.  Consultive and Non-Examining Sources

In September, 2011, psychologist Matthew Dickson performed a consultative examination, noting Plaintiff's report of back pain and depression resulting in "[n]o sleep, no appetite," and agitation (Tr. 238).  Plaintiff reported that he had been receiving mental health services since June, 2011 (Tr. 238).  Plaintiff denied a history of psychiatric hospitalization, but reported that he was withdrawn and had not been interacting well with family members  (Tr. 238).  He indicated that he was able to cook, shop, and pay bills (Tr. 238).

Dr. Dickson observed good eye contact, hygiene, and grooming (Tr. 238).  He noted that Plaintiff was fully oriented (Tr. 239).  Dr. Dickson concluded that Plaintiff's ability to "understand, attend to, remember, and carry out instructions;" and interact appropriately with coworkers and supervisors was not impaired (Tr. 240).  Dr. Dickson found that the ability to adapt to workplace changes was moderately impaired (Tr. 240).  He assigned Plaintiff a

-8-

GAF of 59 with a "guarded" prognosis[3] (Tr. 240).

The same month, orthopedist Clifford M. Buchman, D.O. performed a consultative physical examination, noting Plaintiff's statement that physical therapy had not improved the back condition (Tr. 242). Plaintiff appeared "significantly depressed and heavily medicated" (Tr. 242). He reported occasional right leg numbness, but admitted that he could drive, do housework, and perform personal care activities (Tr. 242-243).

Dr. Buchman noted that Plaintiff did not require the use of an assistive device but was unable to "heel walk" (Tr. 243). He concluded that Plaintiff could "sit, stand, or walk eight hours" in an eight-hour workday and could perform manipulative functions without difficulty (Tr. 244). However, he found that Plaintiff was unable to stoop, carry, push, or pull (Tr. 245). Dr. Buchman found a "limited" ability to climb stairs (Tr. 245).

In October, 2011, Ronald Marshall, PhD. found that Plaintiff experienced mild restriction in activities of daily living, and moderate limitation in social functioning and concentration, persistence, or pace (Tr. 72 ). He concluded that Plaintiff was able to follow and remember simple instructions, and would do "better with brief interactions with others" (Tr. 76).

### 3. Material Submitted After the August 16, 2012 Administrative Opinion

Dr. LaClaire's September 18, 2012 treating notes state that Plaintiff continued to

---

[3]A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. *DSM-IV-TR* at 34.

experience L5 radiculopathy (Tr. 346). Dr. LaClaire noted that Plaintiff had "been asked to look for other employment," opining that Plaintiff was limited to lifting 10 pounds on an occasional basis and 5 frequently (Tr. 346). Dr. LaClare's notes from the following month state that Plaintiff did "not appear to be depressed" and exhibited a "strong and steady" gait (Tr. 345). Dr. LaClaire's December, 2012 records again note that Plaintiff exhibited a "strong and steady" gait and appeared "alert, . . . oriented, pleasant and cooperative" (Tr. 342).

### C.   Vocational Expert Testimony

VE Stephanee Leech classified Plaintiff's former work as a maintenance worker as skilled and exertionally very heavy (as performed) and semiskilled and heavy as described by the Dictionary of Occupational Titles ("DOT") (Tr. 60). She classified Plaintiff's earlier work as a maintenance repair worker as skilled at the very heavy exertional level (as performed) and heavy as described by the DOT (Tr. 60). The ALJ then posed the following question to the VE, describing an individual of Plaintiff's age, education, and work history:

> [A]ssume an individual . . . [who] could maximally lift weights of 20 pounds, could . . . repetitively lift weights of 10 pounds or less, could stand and walk six of eight hours or sit for six of eight hours in an eight hour work day but would need the occasional ability to alternate between sitting and standing and that the individual could in a potential work setting occasionally climb . . . stairs and ramps but could not climb ladders, scaffolds or ropes, that the individual could occasionally balance while standing and walking, could occasionally stoop, kneel, crouch and crawl and that the individual would need to avoid all exposure to hazards such as unprotected heights or moving industrial machinery. With this functional capacity could this individual do light, semiskilled occupations? (Tr. 62-63).

-10-

The VE stated that the above limitations would  preclude the individual from performing Plaintiff's past relevant work or jobs with transferrable skills from the former work (Tr. 63).   The ALJ then amended the original question to additionally limit the hypothetical individual to "simple routine and repetitive work activities in a stable work environment indicative of the maximal abilities to do unskilled work and that the individual could maximally tolerate superficial contacts with supervisors and co-workers and the general public" (Tr. 63).  In response, the VE found that the limitations found in the original and amended hypothetical question (considered together) would not preclude the unskilled, exertionally light work of an assembler (2,000 positions in the lower peninsula of Michigan); packer (3,500); or inspector (4,000) (Tr. 64).

In response to questioning by Plaintiff's attorney, the VE stated that if the same individual were "off task" more than 20 percent of the workday, or missed more than one day of work each month,  all gainful employment would be precluded (Tr. 64).

**D.  The ALJ's Decision**

At Step One of the administrative sequence, the ALJ found that Plaintiff's part-time work as a village trustee did not constitute substantial gainful activity ("SGA") (Tr. 21).  He found that Plaintiff had not engaged in SGA since June 10, 2011 when he ceased working as a maintenance worker (Tr. 21).  At Steps Two and Three, the ALJ found that Plaintiff experienced the severe impairments of "degenerative disc disease of the lumbar spine with lower back and leg pain; [and] depressive disorder with symptoms of anxiety"  but that

-11-

neither of the conditions met or medically equaled an impairment found in Part 404
Appendix 1 Subpart P, Appendix No. 1 (Tr. 22). He found that Plaintiff experienced mild
deficiencies in activities of daily living and moderate deficiencies in social functioning, and
concentration, persistence, or pace (Tr. 23). The ALJ found that Plaintiff retained the
Residual Functional Capacity ("RFC") for "a range of light exertional work" with the
following limitations:

> [C]laimant needs to change positions from sitting to standing occasionally. He
> is limited to only occasional climbing of stairs or ramps, balancing, stooping,
> kneeling, crouching, and crawling. He must avoid hazards such as unprotected
> heights and moving industrial machinery. Additionally, he is mentally limited
> to simple, routine and repetitive work activities in a stable work environment.
> Finally, he can mentally tolerate only superficial contacts with supervisors,
> coworkers, and the general public (Tr. 24).

Citing the VE's testimony, the ALJ found that while Plaintiff was unable to return to
his past relevant work, he could perform the light, unskilled work of an inspector, packer,
and assembler (Tr. 27-28).

The ALJ discounted Plaintiff's allegations of disability (Tr. 24-27). He found that
the evidence supported the conclusion that Plaintiff "stopped working for reasons not related
to the allegedly disabling impairments," noting Plaintiff's acknowledgment that "he lost his
job due to budget cuts" (Tr. 25). The ALJ noted that the objective studies did not support a
worsening of the back condition since the time Plaintiff ceased work (Tr. 25). The ALJ cited
Dr. Buchman's September, 2011 conclusion that Plaintiff could sit, stand, or walk for up to
eight hours in an eight-hour day (Tr. 25). The ALJ noted that none of Plaintiff's treating

-12-

sources found greater limitations than those found in the RFC (Tr. 26).

As to the professed psychological limitations, the ALJ adopted Dr. Dixon's findings that Plaintiff would be moderately impaired in the ability to interact with others and respond appropriately to workplace changes (Tr. 26). The ALJ noted that Plaintiff's psychological problems "largely revolved around problems with social interaction/relationships and problems with situational change" (Tr. 27). The ALJ cited psychological treating notes stating that Plaintiff was able to care for his grandchildren "at least once a week" and engage in a wide variety of everyday activities (Tr. 25).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

-14-

## <u>ANALYSIS</u>

### Plaintiff Has Not Established That a Remand Is Warranted

Plaintiff argues that the hypothetical question to the VE did not account for his full degree of impairment. *Plaintiff's Brief* , 7-11, *Docket #11.* He contends, in effect, that the omission of critical psychological and physical limitations from the hypothetical question invalidates the Step Five finding that he was capable of a significant range of work. *Id.* at 7 (citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994)).

Plaintiff does not identify any specific deficiencies in the hypothetical question. Instead, he argues that critical omissions in the hypothetical question stem from the ALJ's erroneous credibility determination. He contends, in effect, that his testimony that he experienced severe exertional limitations, constant pain, disabling social impairments, and the inability to lift more than a gallon of milk (Tr. 46, 55) ought to have been included in the hypothetical limitations posed to the VE. *Plaintiff's Brief* at 10-11.

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 1996 WL 374186 at *2. The second prong of SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the testimony must be evaluated "based on a

-15-

consideration of the entire case record."*Id.* [4]

The ALJ's credibility determination and by extension, the choice of hypothetical limitation, is well supported and explained.  The ALJ addressed the medically determinable conditions of degenerative disc disease and a depressive disorder by limiting Plaintiff to light work with a sit/stand option and only occasional climbing of stairs and other postural activity (Tr. 22, 24).   The ALJ sufficiently addressed Plaintiff's psychological limitations by restricting him to "simple, routine, and repetitive activities in a stable work environment" with only superficial contact with others (Tr. 62-63).

The medical transcript before the ALJ did not require him to impose any greater limitations in the hypothetical question forming the basis of the RFC.  Consistent with my own review of the treating and consultative records, the ALJ observed that Plaintiff stopped working because his job was eliminated (Tr. 25).   This finding is supported by Dr. Rodrieguez's June, 2011 records stating that Plaintiff reported anxiety as a result of losing

---

[4]In addition to an analysis of the medical evidence, C.F.R. 404.1529(c)(3) lists the factors to be considered in making a credibility determination:

 (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms."

his job (Tr. 181). Psychiatric intake notes from June, 2011 indicate that Plaintiff's job was eliminated the same month (Tr. 230). The same notes state that Plaintiff stated that he intended to seek other employment (Tr. 228). Therapy records state that Plaintiff discussed strategies for procuring a new job (Tr. 215-216).

Further, the ALJ noted that the medical records did not support a deterioration of Plaintiff's condition at the time of the alleged onset of disability (Tr. 25). Consistent with this finding, I note that an October, 2011 MRI of the lumbar spine showed essentially unchanged results from the January, 2008 study (Tr. 259-298). The ALJ reasonably found that Plaintiff's prior ability to work (performing either "heavy" or "very heavy" work) before he lost his job undermined the claim that he became "disabled" the month his job was eliminated (Tr. 25-26). The ALJ cited Dr. Buchman's finding that Plaintiff was capable of sitting, standing, or walking for eight hours in an eight-hour workday (Tr. 25).

As to the professed psychological limitations, the ALJ noted that the treating records did not support the finding that Plaintiff was unable to perform unskilled work (Tr. 25). The ALJ observed that Plaintiff's mental health treatment had been conservative and resulted in an improvement in his condition less than a year after the alleged onset of disability date (Tr. 25, 305-306, 322). The ALJ noted that Plaintiff was able to care for his grandchildren at least once a week and continued to hold an elected part-time position with the local government (Tr. 23, 306-307). Further, the therapy records support the finding that Plaintiff's psychological problems were exacerbated by situational stressors such as losing

-17-

his job, physical limitation, the death of a friend, and the health problems of family members (Tr. 27, 310, 312-313, 329). Plaintiff's contention that the hypothetical question ought have included the his alleged need to be "off task" 80 percent of the workday due to psychological limitations is without merit. *Plaintiff's Brief* at 7-8, 9-10 (Tr. 24, 64).  Because the ALJ's credibility determination was supported by substantial evidence, he did not err in excluding all of the professed claims from the hypothetical limitations. See *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118-119 (6th Cir.1994)(ALJ not obliged to include properly discredited allegations of limitation in  hypothetical to VE).

Plaintiff's brief also contains a recitation of the "treating source rule," but is unaccompanied by any citation to a treating source opinion, much less a fact-based explanation of how the ALJ erred in the analysis of the treating records. *Plaintiff's Brief* at 8-9. My own review of the record shows that in May, 2012, Dr. LaClair stated that Plaintiff was no longer capable of performing custodial work (Tr. 341).  As reported by Plaintiff, his custodial work required "very heavy" lifting and carrying (Tr. 60).  The ALJ's determination that Plaintiff could perform a limited range of exertionally *light* work is not inconsistent with LaClair's finding.  As noted by the ALJ, none of the treating sources imposed greater work related limitations than those found in the RFC (Tr. 25-26).

Finally, although Plaintiff has not cited the medical evidence he submitted after the ALJ's decision, I have considered this evidence in making my recommendation (Tr. 342-346).  To establish grounds for remand based on such material, the claimant must show that

the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); see *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). First, Plaintiff has not provided "good cause" for the tardy submission of the newer material. Moreover, the evidence pertains to Plaintiff's condition subsequent to the administrative decision and as such, is immaterial to whether he was disabled on or before that date[5] (Tr. 342-346). See *Sizemore v. Secretary of Health & Human Services,* 865 F.2d 709, 711-712 (6th Cir.1988)(records related to a claimant's condition *after* the administrative decision not "material" to the ALJ's findings). If Plaintiff believes that he can establish disability after the date of the decision, his remedy would be to apply for benefits for the later period. *Id.* Because the newer records are inapplicable to Plaintiff's condition prior to August 16, 2012, a remand on this basis is not warranted.

In closing, I note that my recommendation to uphold the Commission's decision should not be read to trivialize Plaintiff's physical and mental conditions. Still, the ALJ's determination that he was capable of performing a significant range of work was comfortably

---

[5]

While Dr. LaClair later found greater exertional limitations than those found in the current RFC, they cannot be read to state that Plaintiff experienced such limitations prior to August 16, 2012 (Tr. 346). Moreover, even assuming the opinion bore some relevance to Plaintiff's earlier condition, Plaintiff has not shown good cause for his failure to procure the assessment prior to the ALJ's decision. Good cause "contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue*, 2009 WL 700057, *6 (W.D.Ky. Mar.13, 2009)(citing *Thomas v. Sec'y,* 928 F.2d 255, 260 (8th Cir.1991)); see also *Ledford v. Astrue,* 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. Dec.19, 2008) (citing *Martin v. Comm'r of Soc. Sec.,* 170 Fed.Appx. 369, 374–75, 2006 WL 509293, *5 (6th Cir. Mar.1, 2006)).

2:13-cv-14466-GCS-RSW   Doc # 15   Filed 09/12/14   Pg 20 of 21   Pg ID 448

within the "zone of choice" accorded to the fact-finder at the administrative hearing level. As such, it should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment be GRANTED and that Plaintiff's motion be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall

address specifically, and in the same order raised, each issue contained within the objections.

                                   s/R. Steven Whalen
                                   R. STEVEN WHALEN
                                   UNITED STATES MAGISTRATE JUDGE

Dated:  September 12, 2014


                    CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 12, 2014, electronically and/or by U.S. mail.

                                   s/Carolyn M. Ciesla
                                   Case Manager to the
                                   Honorable R. Steven Whalen